IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **KENT D. STUCKEY, as authorized Stockholders' Representative of the former stockholders of Internet Transaction Solutions, Inc.,** | Case No. 2:08-cv-1188 |
| **Plaintiff,** | **Judge Algenon Marbley** |
| **v.** | **Magistrate Judge Terence Kemp** |
| **ONLINE RESOURCES CORPORATION,** | |
| **Defendant.** | |

## OPINION AND ORDER

### I. INTRODUCTION

This matter is before the Court on Defendant Online Resources Corporation's Motion to Dismiss Amended Complaint. (Doc. # 57.) Defendant requests this Court to dismiss the majority of claims alleged in the Amended Complaint of Plaintiff Kent D. Stuckey, authorized Stockholders' Representative of the former stockholders of Internet Transaction Solutions, Inc. For the reasons set forth below, Defendant's motion is **GRANTED** in part and **DENIED** in part.

### II. PROCEDURUAL HISTORY

Plaintiff Kent D. Stuckey was named the representative of the former shareholders ("the Stockholders") of Internet Transaction Solutions, Inc. ("ITS") in the Merger Agreement ("the Agreement") between ITS and Online Resources Corporation ("ORC"), which authorized him to:

> act on behalf of [the ITS shareholders] in any litigation or
> arbitration involving this Agreement . . . including, without
> limitation, the power: . . . (f) to do or refrain from doing any
> further act or deed on behalf of the Stockholders that [he] deems

1

> necessary or appropriate in [his] sole discretion relating to the
> subject matter of this Agreement as fully and completely as the
> Stockholders could do if personally present.

(Am. Compl., Doc., #37, ¶ 6, quoting Exh. A, Agreement at § 2.12.) In this representative

capacity, he filed this suit against ORC, alleging breach of contract, common law fraud, and

violation of Ohio's securities law, seeking rescission of the Agreement and money damages.

The Court ruled on Defendant's earlier Motion to Dismiss, in an Opinion and Order filed

December 11, 2009. (Order, Doc. # 26.) In that Order, the Court dismissed Plaintiff's claims for

breach of contract resulting from Defendant's failure to timely file a Net Working Capital

Statement; breach of fiduciary duty; negligent misrepresentation; breach of contract or breach of

fiduciary duty, or both, resulting from the termination of the ITS Profit Sharing Plan; and

declaratory judgment. (Order, page 34.) The Court denied Defendant's motion regarding

Plaintiff's claim for breach of contract resulting from Defendant's failure to file a registration

statement and have it declared effective. (*Id.*)

Thereafter, Plaintiff was granted leave to file an Amended Complaint (doc. # 36), and

that pleading was filed on April 16, 2010 (doc. # 37). Defendant neglected to file an answer to

the Amended Complaint, but this Court, after bringing the matter to the parties' attention,

permitted Defendant a grace period in which to file its answer. Defendant filed its Motion to

Dismiss, setting forth the same or similar arguments to dismiss Plaintiff's breach of contract

claims, as well as arguments in favor of dismissal of Plaintiff's fraud, securities, and rescission

claims.

## III. BACKGROUND

From 1999 until its merger with ORC, ITS provided specialized electronic payment

services to the accounts receivable management and utilities industries. It entered into an auction

process for the sale of shareholder interests in late 2006, which resulted in multiple bids of forty-five-million dollars.  On July 26, 2007, the Agreement was signed with the shareholders of ORC. In the Merger Agreement, the Stockholders were given a choice between receiving payment for their shares in the form of either cash or ORC stock, or both.  Out of the forty-five-million dollar purchase price, the Stockholders chose to receive $24,713,061.00 worth of ORC stock.  (Am. Compl., ¶¶ 11 – 17.)

Plaintiff claims that Defendant induced the Stockholders to choose to receive ORC stock in lieu of cash by making a number of representations in the Agreement. Of primary significance to Plaintiff's claims, Defendant promised that it would file a registration statement with the Securities and Exchange Commission within 90 days after the closing, enabling the Stockholders to trade their stock on the market. (*Id.* at ¶¶ 18 – 20; Agreement, § 10.6.)  The Stockholders were also assured the right to receive additional shares of ORC stock on the six, nine, or twelve-month anniversary of the effective date of the Agreement to make up for any decline in stock price that may have occurred in the interim. (*Id.* at ¶¶ 22 – 23; Agreement § 2.6.) The Agreement also required Defendant to submit a Net Working Capital Statement within 90 days after the closing, upon which the parties were ultimately to agree. (*Id.* at ¶¶ 95 – 96; Agreement  § 2.5(b).) Defendant also entered into an Escrow Agreement with the Wilmington Trust Company. The Escrow Agreement provided that part of the purchase price would be put in escrow and required Defendant to give notice of any claims for indemnification, which would be taken out of the escrow account, within one year of the closing of the Merger Agreement. (*Id.* at ¶ 103; *see* Escrow Agreement, § III(b)(i), attached to Am. Compl. as Exh. C.)

The closing occurred on August 10, 2007, making November 8, 2007 the ninetieth day after the closing, and Plaintiff alleges that Defendant took numerous actions after the closing that

constituted breaches of contract. Specifically, Plaintiff alleges that Defendant breached the Agreement when it: (1) failed to file a registration statement by November 8, 2007 for the stock given to the Stockholders as part of the merger; (2) provided insufficient additional shares to the Stockholders upon their election to receive them under the Price Protection Clause of the Merger Agreement; (3) failed to submit a Net Working Capital Statement on time; and (4) gave notice of claims for indemnification after the one-year anniversary of the closing, thereby preventing the Stockholders from receiving the money in the escrow account.

Plaintiff's common law fraud claims allege that Defendant made material representations of fact in the Agreement that it knew—based on a pending but undisclosed SEC review—were false. Specifically, Plaintiff alleges that Defendant represented that "execution, delivery and performance of the Agreement" would not result in a violation of any government law or regulation which would have a "material adverse effect" on the transaction. (Am. Compl. ¶ 130, quoting § 4.2 of the Agreement.) Under that section of the Agreement, Defendant also represented that "execution, delivery and performance" of the Agreement did not require any approval, authorization, or declaration with any governmental body "which failure to obtain would have a [m]aterial [a]dverse [e]ffect on the consummation of the transactions" contemplated by the Agreement. (*Id.*, ¶ 132.) So, too, in § 4.5 and 4.7 of the Agreement, Defendant made representations that there was no investigation then pending against Defendant and that all filings before the SEC were compliant with applicable law. These representations, according to the Amended Complaint, were knowingly false as, unbeknownst to Plaintiff at the time of negotiation and before execution and closing of the Agreement, an SEC review of ORC's December 2006 10-K was already underway, a review that called for clarification of numerous aspects of that 10-K. Defendant did not reveal the existence of the SEC review until after the

closing—in "late August 2007" to a Stockholder and in "early September 2007" to the Stockholders' legal counsel.  (*Id.*, ¶ 34.)  That revelation was in the form of a June 14, 2007 letter from the SEC ("the Comment Letter") which informed Defendant that the SEC was reviewing Defendant's December 31, 2006 10-K filing.  (Am. Compl., Exh. D.)

Significant to Plaintiff's fraud claims, however, is Plaintiff's allegation that it was not until much later that Plaintiff discovered *when* Defendant knew about the review: before the execution and closing of the Agreement.  (Am. Compl., ¶ 31.)  Plaintiff alleges that Defendant knowingly failed to disclose this information to induce the Stockholders to enter into the Agreement.  Without this knowledge, Plaintiff alleges, the Stockholders were duped into believing Defendant's representations that nothing stood in the way of the proper filing of the registration statement which would permit the Stockholders to trade their newly acquired ORC stock on the open market.  (*Id.* at ¶¶ 135 – 138.)

Last, Plaintiff brings a claim under Ohio's Securities Law, Chapter 1707 of the Ohio Revised Code.  Plaintiff alleges that "Defendant's representations in the Agreement and during the negotiations of the Agreement, as well as Defendant's omissions" as set forth in the Amended Complaint, were "knowingly false, constituted fraud, and violated securities laws, rules and regulations" as applicable to Defendant's sale of ORC stock to the Stockholders.  (Am. Compl., ¶ 161.)  Plaintiff alleges that Defendant's actions and omissions violated §§ 1707.44(B)(4) and (G), and on behalf of the Stockholders, Plaintiff seeks to void the stock exchange and "receive their $24,713,061 purchase price for the Stock" under § 1707.43(A).

Defendant responds with the present motion to dismiss for failure to state a claim upon which relief can be granted as to all of these claims, except for Plaintiff's breach of contract

claim under the Price Protection Clause and the claim for breach of the Escrow Agreement. These two, Defendant acknowledges, have been adequately stated. (Motion, pages 19 and 21.)

## IV. ANALYSIS

### A. Motion to Dismiss Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a complaint may be dismissed if it fails to state a claim upon which relief can be granted. Because a motion under Rule 12(b)(6) is directed solely to the complaint itself, *Roth Steel Prods. v. Sharon Steel Corp.*, 705 F.2d 134, 155 (6th Cir. 1983), the focus is on whether the plaintiff is entitled to offer evidence to support the claims, rather than on whether the plaintiff will ultimately prevail. *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 184 (2005) (citing *Scheuer v. Rhodes*, 4l6 U.S. 232, 236 (1974)). The purpose of a motion to dismiss under Rule 12(b)(6) "is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993).

If there is an absence of law to support the type of claim made, or if the facts alleged are insufficient to state a valid claim, or if on the face of the complaint there is an insurmountable bar to relief, dismissal of the action is proper. *Little v. UNUMProvident Corp.*, 196 F. Supp.2d 659, 662 (S.D. Ohio 2002) (citing *Rauch v. Day & Night Mfg. Corp.*, 576 F.2d 697 (6th Cir. 1978)).

The function of the complaint is to afford the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. *See Conley v. Gibson*, 355 U.S. 41, 47 (1957); *Lewis v. ACB Business Serv., Inc.*, 135 F.3d 389, 405 (6th Cir. 1998). A complaint need not set down in detail all the particularities of a plaintiff's claim. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." However, "Rule 8 . . . does not unlock the doors of discovery for a plaintiff

6

armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice." *Id*. at 1949.  *See also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,

555 (2007) ("A formulaic recitation of the elements of a cause of action" is not enough).  The

complaint "must contain either direct or inferential allegations respecting all the material

elements to sustain a recovery under *some* viable legal theory."  *Scheid v. Fanny Farmer Candy

Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988) (emphasis in original).

Legal conclusions "must be supported by factual allegations" that give rise to an

inference that the defendant is, in fact, liable for the misconduct alleged.  *Iqbal*, 129 S.Ct. at

1949-50.  The factual allegations must show more than a possibility that the defendant acted

unlawfully.  "Where a complaint pleads facts that are 'merely consistent with' a defendant's

liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id*. at 1949 (quoting *Twombly*, 550 U.S. at 557).

In addition, Federal Rule of Civil Procedure 9(b) requires that fraud be pled with

particularity.  To satisfy Rule 9(b), a plaintiff must at a minimum allege the time, place and

content of the alleged misrepresentation on which he or she relied, the fraudulent scheme, the

fraudulent intent of the defendant, and the resulting injury.  *Bennett v. MIS Corp.,* 607 F.3d 1076,

1100 (6th Cir. 2010).

When considering a motion to dismiss pursuant to Rule 12(b)(6), the court must construe

the complaint in the light most favorable to the plaintiff and accept all well-pleaded material

allegations in the complaint as true.  *See Scheuer*, 4l6 U.S. at 236; *Arrow v. Federal Reserve

Bank of St. Louis*, 358 F.3d 392, 393 (6th Cir. 2004); *Mayer*, 988 F.2d at 638.  The court will

indulge all reasonable inferences that might be drawn from the pleading.  *See Saglioccolo v.*

*Eagle Ins. Co.*, 112 F.3d 226, 228 (6th Cir. 1997).  However, it will not accept conclusions of law or unwarranted inferences cast in the form of factual allegations.  *See Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000); *Lewis*, 135 F.3d at 405.

## B. Unenumerated Claims –
## Failure to Process Timely the Stock Transfer and
## Breach of Net Working Capital Provision

In the "Factual Background" of Plaintiff's Amended Complaint, there appear to be two claims that are not incorporated within the enumerated Counts.  One, under Section G, is titled "Defendant's Failure to Timely Process Stock Transfer Requests."  (Am. Compl., ¶¶ 70 – 82.)  The other, "[Defendant] Online Resources' Breach of Net Working Capital Provision" is in Section K of the Factual Background section (*id.*, ¶¶ 95 – 100).

Defendant asserts that neither of these claims is stated sufficiently, and Plaintiff does not respond to Defendant's argument in his Response.  For the sake of completeness, this Court will treat Sections G and K as asserted claims and test each claim's sufficiency.

### *1. Stock Transfer*

Defendant argues that Plaintiff fails to state a claim for untimely stock transfer by (1) failing to identify any contractual obligation on Defendant's part; and by (2) failing to provide any legal grounds for a claim against Defendant with regard to the transfer of stock.  (Motion, pages 21 – 22.)  Plaintiff states that following the execution of the Agreement, "several days following August 10, 2008," the Stockholders were "advised by Defendant's transfer agent that it could not yet remove the restrictions from the Stock and effectuate transfers."  (Am. Compl., ¶ 70.)  From August 11, 2008 to August 20, 2008, several emails were exchanged between the Stockholders' counsel and Defendant's General Counsel regarding the ability of the transfer agent to commence transfer of stock to the Stockholders, with confirmation of transferability not

confirmed until August 20.  (*Id.* at ¶¶ 71 – 78.)  Thereafter, however, some Stockholders still experienced delay in obtaining their shares.  (*Id.* at 82.)

Although Plaintiff sets forth specific facts and dates regarding delay of the stock transfer, Plaintiff fails to specify any cause of action.  Further, this "claim" is not included in any of the Counts of the Amended Complaint.  For example, in Count One, "Breach of Contract," Plaintiff asserts that Defendant "materially breached the terms of the Agreement and Escrow Agreement, as set forth above, including the breach of registration rights, breach of price protection rights, breach of its obligation to complete the termination of the ITS Profit Sharing Plan, and breach of the terms of the Escrow Agreement . . . ." (Am. Compl., ¶ 126.)  No breach is stated regarding transfer of stock.  Similarly, Plaintiff does not include facts regarding stock transfer in any of the Amended Complaint's misrepresentation claims.  Plaintiff has not stated any duty owed or harm suffered, so no claim under contract or tort is stated.

Essentially, Plaintiff's claim of failure to timely transfer stock consists entirely of conclusory allegations entitled to no assumption of the truth under the *Iqbal/Twomby* standard.  "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Iqbal*, 129 S.Ct. at 1949.  "Threadbare recitals of the elements of a cause of action supported by mere conclusory statements, do not suffice."  *Id.* Here, the Amended Complaint lacks sufficient recitation of any cause of action, and, as a result, Plaintiff fails to state a claim.  With regard to this claim, Defendant's motion to dismiss is **GRANTED.**

### *2. Net Working Capital Provision*

Plaintiff's purported claim of Defendant's "Breach of Net Working Capital Provision" also fails to state a claim.  (Am. Compl., ¶¶ 95 – 100.)  Plaintiff asserts that contrary to a

provision in the Agreement requiring Defendant to submit its determination of a "Net Working Capital adjustment" by a specified date, Defendant did not meet this requirement. (*Id*. at ¶ 97.) Although this claim specifies the provision within the Agreement Defendant allegedly breached—§ 2.5(b)—Plaintiff alleges no harm resulting from the breach. In addition, the facts within this section of the Amended Complaint are not reiterated within any of the Counts, so this Court cannot determine from a reading of the Amended Complaint what harm alleged within those Counts is related to any breach of § 2.5(b).

As the Court noted in its December 11, 2009 Opinion and Order regarding this claim in the original Complaint, "[Plaintiff] has not explicitly claimed any harm at all resulting from the failure to file the [Net Working Capital] Statement on time; he has simply claimed in these paragraphs the existence of the provision in the Agreement, [Defendant's] breach, and that the [Stockholders] made an unfulfilled request for information supporting their claim." (Order, page 19, referring to ¶¶ 80 – 85 of the original Complaint.) The Amended Complaint does not remedy this fatal flaw; it still lacks any clear statement of harm resulting from Defendant's alleged breach. Therefore, under *Iqbal* and *Twomby*, Plaintiff fails to state a claim.

Therefore, Defendant's Motion to Dismiss with regard to Plaintiff's claim of failure to timely provide Net Working Capital calculation is hereby **GRANTED**.

### C. Plaintiff's Breach of Contract Claims – Count One

Plaintiff alleges four claims of breach of contract: (1) breach of registration rights; (2) breach of price protection rights; (3) breach of obligation to terminate ITS's Profit Sharing Plan; and (4) breach of the Escrow Agreement. (Am. Compl., ¶¶ 124 – 127.) As noted *supra*, Defendant does not seek dismissal of Plaintiff's claims of breach of price protection rights and breach of the Escrow Agreement.

*1. Breach of registration rights*

Plaintiff's claim of breach of registration rights has already survived Defendant's first Motion to Dismiss and was discussed in detail by the Court. Defendant offers no new argument, and this Court declines Defendant's tacit invitation to change its mind. Thus, Defendant's Motion to Dismiss with regard to Plaintiff's claims of breach of registration rights is hereby **DENIED**.

*2. Breach of obligation to terminate ITS's Profit Sharing Plan*

Plaintiff's claim of breach of obligation to terminate ITS's Profit Sharing Plan was dismissed by the Court's earlier order for failing to explain what kind of claim it was and for failing to explain the legal grounds upon which it rested, such as a contractual provision in the Agreement. (Order, page 31.) Plaintiff has not added much to this claim in the Amended Complaint, and he has not added enough to state a claim. Although Plaintiff points to provisions in the Agreement in which *ITS* was obligated to terminate the Profit Sharing Plan (Section § 8.13), his allegations regarding Defendant's duty fall short. Plaintiff alleges that the Stockholder's duty to indemnify Defendant for costs incurred in terminating the Plan and the parties' agreement that "other action" may be taken to complete the transactions creates in Defendant a contractual obligation to terminate the Plan. (Am. Compl., ¶¶ 113 – 123.) This Court finds that those allegations are insufficient to state a claim for breach of contract. As a result, Defendant's Motion to Dismiss with regard to Plaintiff's claim for breach of obligation to terminate ITS's Profit Sharing plan is hereby **GRANTED**.

### D. Plaintiff's Claims of Fraud – Counts Two, Three, and Four

A claim of fraudulent misrepresentation arises when a party is induced to enter into an agreement through fraud or misrepresentation. *ABM Farms, Inc. v. Woods*, 81 Ohio St.3d 498,

502, 692 N.E.2d 574 (1998).  The elements of fraudulent misrepresentation are essentially the same as those for fraudulent nondisclosure and fraudulent inducement.  *Gentile v. Ristas*, 160 Ohio App.3d 765, 781, 828 N.E.2d 1021 (2005).  The elements of fraud under Ohio law are: (1) a representation or, when there is a duty to disclose, a concealment of a fact; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity, or with such utter disregard as to whether it is true or false that knowledge may be inferred; (4) with the intent of misleading another into relying upon it; (5) justifiable reliance on the representation or concealment; and (6) an injury proximately caused by that reliance.  *Williams v. Aetna Fin. Co.,* 83 Ohio St.3d 464, 475, 700 N.E.2d 859 (1998).  Plaintiff alleges claims of fraudulent misrepresentation and fraudulent non-disclosure (Count Two), fraudulent inducement (Count Three), and securities fraud (Count Four).

Defendant contends that Plaintiff fails to allege a false representation or a duty to disclose on which Plaintiff could rely.  (Motion, pages 24 – 25, 32 – 33.)  In addition, regarding Count Three, Defendant states that the representations alleged by Plaintiff are "[a]spirational statements about future goals," and, therefore, are insufficient.  Defendant also argues that "Count III is woefully deficient in its allegation of damages."  (*Id.* at page 35.)  Finally, in two sentences in its Motion (and without citing to any law in support), Defendant appears to argue that Plaintiff's fraud claims are really breach of contract claims and, therefore, are insufficient.  (Motion, page 25.)

### 1. False representation

In Count Two, Plaintiff alleges that as a "material inducement to the Stockholders' decision to enter into the merger and elect to take Stock in lieu of cash," Defendant represented that the "execution, delivery and performance" of the Agreement would not result in any

violation of government law or rule or require any approval or authorization from any government body.  (Am. Compl., ¶¶ 130 – 131, citing to § 4.2 of the Agreement.)  In addition, Defendant represented that there was no "investigation pending" and that Defendant's "Annual Report on Form 10-K" for fiscal year ending on December 31, 2006 "complied in all material respects" with applicable law.  (*Id.*, ¶¶ 132 – 133, citing to §§ 4.5 and 4.7 of the Agreement, respectively.)  Plaintiff alleges that these representations were knowingly false because Defendant knew, before the execution and closing of the Agreement, that an ongoing SEC review of Defendant's 10-K had begun.  This SEC review, according to Plaintiff, was an investigation that precluded the ORC-stock registration statement from being declared effective and that rendered ORC's December 2006 10-K non-compliant.

Defendant contends that because the Agreement is integrated, "Plaintiff cannot rely on any affirmative representation outside of the Agreement[.]"  (*Id.* at page 24.)  Therefore, says Defendant, any representation must be found in the Agreement, and "there is no representation in the Agreement that was false."  (*Id.*)  Defendant painstakingly evaluates the sections of the Agreement which Plaintiff alleges contain false representations and, essentially, argues for an interpretation of each that differs from Plaintiff's.  (*Id.* at pages 25 – 28, referring to §§ 4.2, 4.5, and 4.7.)  For example, Defendant points to the regularity of SEC review of public-company filings, and it distinguishes this SEC "review" from an "investigation" as disclaimed by Defendant in the Agreement.  (*Id.* at page 26.)

These arguments rely on issues of fact and interpretation—unrelated to the salient issue of whether Plaintiff sufficiently *pleads* the claim; instead, these arguments relate to whether Plaintiff can *prevail* on the claim.  *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 184 (2005) (noting that the Rule 12(b)(6) focus is on whether the plaintiff is entitled to offer evidence

to support the claims, rather than on whether the plaintiff will ultimately prevail) (citation omitted).

Both Ohio law, which governs Plaintiff's fraud claims, and Delaware law, which governs the Agreement, permit introduction of extrinsic evidence to prove a fraud claim.[1]  (Response, page 29, citing *Galmish v. Cicchini*, 90 Ohio St.3d 22, 28 (2000) (stating, "the parol evidence rule does not prohibit a party from introducing parol or extrinsic evidence for the purpose of proving fraudulent inducement.") and *S.C. Johnson & Son, Inc. v. DowBrands, Inc.*, 167 F.Supp. 2d 657, 674 (D. Del. 2001) (noting that "under Delaware law, merger and disclaimer clauses do not prevent claims of fraudulent misrepresentation.").)   Defendant's arguments that the Agreement's integration clause prohibits consideration of representations outside the Agreement are not well-taken.

Taking Plaintiff's allegations as true, Defendant represented in the Agreement that no impediment existed to its timely filing of the registration statement while knowing that the SEC review was underway.  Instead of revealing this information to the Stockholders, Defendant allegedly withheld notice of the SEC review until after the deal had closed—and never provided the Comment Letter.  A trier of fact could find that Defendant made false representations with the intent of inducing the Stockholders to enter into the Agreement.  Plaintiff sufficiently alleges a false representation with regard to Counts II and IV.

In Count III, Plaintiff alleges that Defendant fraudulently induced Stockholders to exercise price protection on May 10, 2008 rather than preserving those rights through August 2008, as permitted under the Agreement.  (Am. Compl., ¶ 155.)  In support, Plaintiff claims the Stockholders justifiably relied upon Defendant's representations in March and May of 2008 that

---

[1] As a federal court exercising diversity jurisdiction, this Court is bound to apply Ohio law, the law of the forum state, to tort claims, and it applies Delaware law to the contract claims, as the parties agreed in § 14.9 of the Agreement.  *See*, Exh. A to the Am. Compl.

registration of the stock would occur soon. (*Id.*, ¶ 153.) Those representations are alleged as follows:

> After January 28, 2008, Defendant represented to Stockholders that Defendant's filing of the registration statement was imminent, stating (a) on March 12, 2008, that "[w]e are still pursuing it [registration] and "have not reduced our intensity," (b) on May 2, 2008, that "[t]he goal would be to file the S-1 right after we file our 10-Q, which is scheduled for May 10 at the latest, and (c) on May 6, 2008, that "[w]e are planning to file within the next couple of weeks."

(Am. Compl., ¶ 153, alterations in original.) Plaintiff claims that these representations "were, upon information and belief, knowingly false and fraudulent." (*Id.*, ¶ 155.) The purpose of these false representations, alleges Plaintiff, was to mislead the Stockholders "into believing that registration of their Stock was imminent so that they would exercise price protection in May rather than preserving price protection rights through August, as was their right under the Agreement." (*Id.*)

In addition to its argument that the Agreement's integration clause thwarts any reliance on representations as alleged in the Amended Complaint—which, as discussed *supra* are not meritorious—Defendant argues that because these are statements of future goals, they cannot form the basis of a fraud claim, relying on *Ullmo v. Gilmour Academy*, 273 F.3d 671, 678 (6th Cir. 2001). (Motion, page 32.)

In *Ullmo*, the Sixth Circuit upheld the district court's grant of summary judgment in favor of a defendant-school on contract and fraud claims stemming from a statement of philosophy contained in the school's student/parent handbook. In that handbook, the school stated its mission as "the search for excellence in each person" and its teaching tradition as "respecting pupils' differing abilities and styles of learning." *Id.* at 675. Parents of a student sued the school

for failing to instruct effectively their child within his disabilities, as evidenced by his continuous struggles in his class work.

The district court found, and the Sixth Circuit affirmed, that the plaintiffs failed to allege a false representation. The Sixth Circuit noted that the handbook lacked any "description of the faculty's teaching methods or any promise as to the manner in which the faculty will accommodate a student's learning disabilities." *Id.* at 676. Further, "[n]o standards are set forth to determine whether [the school] has worked for the full development of its students or respected its students' differing abilities." *Id.* The language, therefore, was merely "aspirational" and "contain[ed] no representation of fact sufficiently definite for a fraud claim." *Id.* at 678.

In contrast, here, Plaintiff alleges specific statements containing the time, place, and content requirements under Rule 9(b). Further, a trier of fact could find that these representations fall within the exception to the rule prohibiting aspirational representations in a claim of fraud: where an individual makes a promise concerning a future action but, at the time of making it, has no intention of keeping the promise. *Infocision Management Corp. v. Foundation for Moral Law, Inc.*, 2009 WL 2244166, *4, n.3 (N.D. Ohio 2009), citing *Williams v. Edwards*, 129 Ohio App.3d 116, 124, 717 N.E.2d 368 (1998).

Further, Plaintiff alleges additional evidence in support of its claim: Defendant's failure to produce any draft registration statements or other documents reflecting an ongoing preparation of the registration statement between the time of January 28, 2008 and May 10, 2008. (Am. Compl., ¶ 52.)

> There is no reasonable possibility that Defendant would have, on May 6, 2008, been "planning to file [a registration statement] within the next couple of weeks" without there being draft documents being worked on and created pertaining to that

> registration.  Nor is there any reasonable possibility that on May 2, 2008, Defendant's "goal would be to file the S-1 right after we file our 10-Q, which is scheduled for May 10 at the latest" without there being draft documents pertaining to that registration being created and worked on at that time.

(Am. Compl., ¶ 54, alterations and quotation marks in original.)

Plaintiff points to *Martin v. Ohio State University Foundation*, 139 Ohio App.3d 89, 742 N.E.2d 1198 (2000) and *Millersport Hardware, Ltd. v. Weaver Hardware Co.*, 2009-Ohio-6556, 2009 Ohio App. LEXIS 5493 (2009), in support of his contention that the lack of draft registration statements or documents belies Defendant's assurances that it was planning to file the registration statement "within the next couple of weeks."  (Response, page 29.)

In *Martin*, a landowner brought claims for fraudulent and negligent misrepresentation against an estate planner and attorney relating to a financial plan that involved the purchase of life insurance and putting land into a trust.  Particularly at issue was whether defendants had fraudulently misrepresented to plaintiff that the property placed in trust would have to be sold before he would receive any income.  At the close of trial, the trial court granted a directed verdict for defendants.  The court of appeals reversed, finding, *inter alia*, that the plaintiff-landowner had presented sufficient evidence for every element of fraudulent misrepresentation, including that the representations were made falsely.  *Id.* at 100.  Although the trial court had found that the defendants "were only giving projections in the planning documents and did not make the representations with knowledge of their falsity[,]" the court of appeals found that the representations in the documents provided to the plaintiff were not "mere predictions of future events."  *Id.* (internal quotation marks omitted).

> Although we agree that the dollar amounts, numbers, payout figures, and calculations utilized may be properly termed as "predictions," the starting date [of income received] was not based upon an "opinion" or an "estimate."  The starting date was

17

> presented as factual.  Construing the evidence most strongly in
> favor of [plaintiff], there was sufficient evidence that [defendants]
> continued to make these representations with full knowledge of
> their falsity.

*Id.* at 101.

Similarly, in *Millersport*, the court of appeals reversed a trial court's grant of summary

judgment to defendants on plaintiff's claim of fraudulent inducement where that court found that

any alleged misrepresentation related to future events and, therefore, could not serve as a basis

for a claim of fraud.  2009-Ohio-6556 at ¶ 25.  There, a plaintiff brought claims against a

defendant, alleging that the defendant had represented during negotiations for the sale of his

hardware store that no other hardware store would be moving into the area.  Plaintiff claimed

that defendant knew that a national chain had made plans to open a store but that defendant

failed to disclose that information.  Although the trial court found that reasonable minds could

reach but one conclusion—in defendant's favor—the court of appeals disagreed.

> . . . [W]e find that [defendant's] statement did not pertain to the
> future, but rather referred to the intent of any businesses presently
> "looking to come into" the Baltimore, Ohio area.  If the trier of fact
> believed [plaintiff's] allegation [that] the question about [national
> chain] Ace Hardware had been asked and answered, then it could
> conclude [that defendant's] alleged response [that] he did not know
> of any business looking to come into the area is false.
>
> A trier of fact could find knowing whether a potential competitor
> was presently exploring the possibility of opening a store would be
> a material issue in the transaction.

*Id.* at ¶¶ 5 – 6.

Defendant offers no law to the contrary.  Instead, Defendant argues a different

interpretation: that the "most reasonable reading of these statements" is that Defendant was

working on its 10-Q and after its completion would begin working on the registration statement.

Thus, no drafts of the registration statement would exist.  (Reply, page 17.)  A more "reasonable"

18

reading, however, is not the proper Rule 12(b)(6) inquiry.  The proper test is whether, accepting all well-pleaded allegations as true, plaintiff undoubtedly can prove no set of facts in support of those allegations that would entitle him to relief.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Bishop v. Lucent Technologies, Inc.*, 520 F.3d 516, 519 (6th Cir. 2008).

Here, the Amended Complaint alleges that Defendant falsely stated that it was in the process of getting the registration statement ready to file.  These statements could be found by a trier of fact to be false—that Defendant knew the statements were false as evidenced by the lack of drafts or other documents relating to the preparation of the registration statement.  Further, a trier of fact could find that Defendant's statements were not merely aspirational, but were promises concerning a future action which, at the time of making them, Defendant had no intention of keeping.  Consequently, the Court finds that Plaintiff sufficiently alleges a false statement upon which the Stockholders reasonably relied for the purpose of Count III.

### 2. Duty to disclose

Defendant argues that Plaintiff fails to allege that Defendant had a duty to disclose as neither the Agreement nor the common law imposes such a duty.  (Motion, page 19.)  Typically, "[i]n arms length business transactions, each party is ordinarily presumed to have the opportunity to ascertain relevant facts available to others similarly situated, and in such instances neither party has a duty to disclose material information to the other."  *Escue v. Sequent, Inc.*, 2010 WL 3365933, *7 (S.D. Ohio), citing *Blon v. Bank One, Akron, N.A.*, 35 Ohio St.3d 98, 101, 519 N.E.2d 363 (1988).  However, significant to the facts alleged in the Amended Complaint, "full disclosure may be required of a party to a business transaction where such disclosure is necessary to dispel misleading impressions that are or might have been created by partial revelation of the facts."  *Id.; Miles v. Perpetual Savings & Loan Co.,* 58 Ohio St.2d 97, 101, 388

N.E.2d 1364 (1979).  *See also Word of God Church v. Stanley*, Slip Copy, 2011 WL 1641714 (Ohio App. 2 Dist., April 29, 2011).

In *Escue*, the sole shareholder of an acquired company brought an action against the directors of the acquiring company, alleging, *inter alia*, fraudulent non-disclosure.  There, the plaintiff alleged that the defendants had failed to inform him of an ongoing criminal investigation and had failed to disclose pertinent financial statements.  The district court, denying defendants' motion to dismiss, noted that a party to a business transaction has a duty to speak "if the party fails to exercise reasonable care to disclose a material fact which may justifiably induce another [party] to act or refrain from acting" where the non-disclosing party knows such non-disclosure "will render a prior statement or representation untrue or misleading."  2010 WL 3365933 at *7. The *Escue* defendants had made numerous representations in the two companies' merger agreement, including representations relating to government investigations and audited financial statements.  The court found that the plaintiff had adequately alleged a duty to disclose based on the defendants' alleged concealment of material facts that rendered its other representations misleading.

Here, Plaintiff alleges that despite Defendant's disclosure of numerous other SEC filings at the time of the execution and closing of the Agreement, it failed to disclose the SEC Comment Letter. [2]  (Am. Compl., ¶ 143.)  In light of Defendants' other disclosures, the *absence* of the Comment Letter rendered its other disclosures and representations misleading, according to Plaintiff.  Defendant allegedly failed to disclose the material fact of the SEC review, a fact upon which the Stockholders would have justifiably relied in their election to receive shares of stock. Whether Defendant's nondisclosure was done with the intent to deceive or defraud the

---

[2] In paragraph 33 the Amended Complaint, Plaintiff states that on August 9, 2007, Defendant provided ORC's 2006 10-K and May 10, 2007 10-Q; and ORC's May 17, July 26, and August 1, 2007 Forms 8-K.

Stockholders is a question of fact for a jury.  That nondisclosure within the context of other related disclosures forms the basis of Defendant's duty to disclose.  *Bays v. Hunter Savings Ass'n*, 539 F.Supp. 1020, 1025 (S.D. Ohio 1982) (noting that Ohio law imposes a duty to disclose to dispel misleading impressions).  For the purposes of Rule 12(b)(6) review, the Court infers such a duty to disclose from the allegations within the Amended Complaint.

### 3. Damages

Defendant argues that the Amended Complaint fails to assert properly damages in support of Count III.  (Motion, pages 35 – 36.)  Count III alleges that Defendant falsely represented to the Stockholders that filing of the registration statement was imminent so that the Stockholders would exercise their rights under the price protection mechanism in May of 2008 instead of August.  (Am. Compl., ¶¶ 153 – 155.)  These representations, alleges Plaintiff, "proximately caused material harm to Stockholders by inducing them to elect price protection on May 10, 2008."  (*Id.*, ¶ 158.)

Defendant asserts that Plaintiff's allegation of damages is "conclusory."  (Motion, page 35.)  What's more, according to Defendant, "the only type of damages that could have been suffered would be because [P]laintiff exercised price protection at a time when the shares were not registered."  (*Id.*)  Such damages are barred by the Agreement itself, as a claim for indemnification is the "sole recourse and exclusive remedy" for tort claims.  (*Id.*, pages 35 – 36, citing to § 11.4(c) of the Agreement.)  This argument was rejected by the Court in its December 11, 2009 Opinion and Order:

> As an initial matter, it is simply too soon to tell whether any harm has been suffered despite the exercise of the Price Protection Mechanism, which permitted the [Stockholders] to elect to receive additional shares of ORC on the six-, nine-, or twelve-month anniversary of the closing to make up for any drops in share price that might have occurred. Such a fact-intensive issue is improper

> for a Rule 12(b)(6) dismissal. Moreover, [Defendant] agrees that
> [Plaintiff] has stated a valid claim that [Defendant] did not comply
> with the agreed-upon method of calculating the number of shares
> to be provided pursuant to the Price Protection clause. If there is
> merit to this claim, it would seem necessary also to conclude that
> the Price Protection Clause did not fully compensate the
> [Stockholders] for the harm they have suffered from the failure of
> [Defendant] to file a registration statement. Thus, this Court cannot
> conclude, as [Defendant] requests, that no harm whatsoever has
> been suffered by [Plaintiff] and the [Stockholders] due to the
> presence and exercise of the Price Protection Mechanism in the
> Merger Agreement.

Defendant offers no new argument for this Court to consider. Therefore, the Court finds that

Plaintiff, for the purpose of Rule 12(b)(6), sufficiently alleges damages in support of Count III.

### 4. Fraud claims arising out of the Agreement

Although Defendant merely touches on its argument that Plaintiff's fraud claims are

recast breach of contract claims (Motion, page 25), it returns to this argument more fully in its

Reply: "[P]laintiff wholly ignores the point that because the alleged misrepresentations are in the

Agreement, [P]laintiff cannot plead a fraud claim. (Reply, page 7.)  In support, Defendant cites

to *Premier Business Group, LLC v. Red Bull of North America, Inc.*, 2009 WL 3242050 (N.D.

Ohio 2009) and *Infocision Management Corp. v. Foundation for Moral Law, Inc.*, 2009 WL

2244166 (N.D. Ohio 2009).  In *Premier,* the court found that alleged misrepresentations were

simply promises to act in the future and that the complaint lacked allegations of an intent not to

deliver on those promises.  "Finally, [defendant's] promises were all contractual ones, the breach

of which are not actionable as fraud."  *Premier*, 2009 WL 3242050, *7.

In *Infocision*, the court had denied defendant's earlier motion to dismiss plaintiff's

fraudulent inducement claim—permitting that claim to be pled alongside plaintiff's breach of

contract claim—but dismissed the fraud claim at the summary judgment stage.  Noting that

"under Ohio law, the existence of a contract action generally excludes the opportunity to present

the same case as a tort claim," the court found that plaintiff had failed to demonstrate "genuine issues with respect to material facts supporting an independent fraud." *Infocision*, 2009 WL 2244166 at *4 citing *Wolfe v. Cont'l Cas. Co.*, 647 F.2d 705, 710 (6th Cir. 1981). Here, Plaintiff states that the fraud occurred where Defendant made representations in the Agreement that were later contradicted by the surfacing of the SEC Comment Letter. Plaintiff adequately alleges herein that Defendant made a promise concerning a future action that it had no intention of keeping: Defendant promised to file the registration statement within 90 days while knowing that the pending SEC review would preclude the registration statement from being declared effective.

The misrepresentations alleged by Plaintiff all arise from the Agreement, as cited throughout this portion of the Amended Complaint: misrepresentations were made in Sections 4.2, 4.5, and 4.7 of the Merger Agreement. (Am. Compl., ¶ 131.) But not all of the facts alleged by Plaintiff arise out of the Agreement itself. Plaintiff alleges that during the time of the negotiations and execution of the Agreement, Defendant was aware that an SEC review of Defendant's December 2006 10-K—a review that would hinder Defendant's ability to file the registration statement within 90 days of closing of the Agreement. It is Plaintiff's allegation that Defendant deliberately failed to disclose the SEC review as an inducement to the Stockholders' election to receive stock that separates Plaintiff's breach of contract claim from the fraudulent inducement claim.

As noted, *supra*, both Ohio and Delaware law permit the introduction of extrinsic evidence to prove a claim of fraudulent inducement. Defendant offers no law to the contrary.

As a result of the foregoing, this Court finds that Plaintiff adequately states its fraud claims, as alleged in Counts II, III, and IV. With regard to these claims, Defendant's Motion to Dismiss is **DENIED.**

**E. Rescission**

Defendant claims that Plaintiff's remedy under Ohio's securities law—rescission—is both impossible and time-barred.  (Motion, pages 30 – 31.)  Defendant asserts that rather than being returned to the position they were in prior to the Agreement—as rescission provides—what the Stockholders seek is "an alternative remedy that would allow the [Stockholders] now to receive cash in exchange for ORC shares they elected to receive at closing."  (*Id.* at page 30.)  Defendant argues that Plaintiff's rescission claim is doomed to failure because rescission itself is impossible: for the Agreement to be rescinded the ITS stock would have to be returned to the Stockholders, while ORC stock and cash would have to be returned to Defendant.  "Nothing else puts the parties in the position that they were [in] before the Agreement was executed."[3]  (Reply, page 13.)

To the contrary, Plaintiff asserts Ohio R.C. § 1707.43(A) provides that, upon rescission, "the seller is liable to the purchaser for the full amount paid by the purchaser."  (Response, page 26, emphasis and internal quotation marks omitted.)  Plaintiff argues that the "full amount" is $24,713,061 because "the Stockholders gave up the rights to receive $24.7 million in cash in exchange for receiving [D]efendant's shares . . . ."  (*Id.*)  Defendant disagrees with Plaintiff's reading of the Agreement and the Stockholders' "rights to receive $24.7 million in cash." (Reply, page 13.)

In *Roger v. Lehman Vors. Kuhn Loeb, Inc.*, 621 F.Supp. 114 (S.D. Ohio 1985), the purchaser of stock brought an action seeking rescission of sales of stock.  The defendant moved to dismiss, arguing in part that the purchaser was precluded from relief under Ohio R.C. §

---

[3] For the first time, in its Reply, Defendant calls into question whether the Agreement constitutes a "sale" and whether the parties are "purchaser and "seller" for the purposes of R.C. § 1707.43.  As noted in the Court's December 11, 2009 Opinion and Order, arguments raised for the first time in a party's reply will not be considered by the Court.  (Order, pages 16 – 17, citing to *U.S. v. Lopez-Medina*, 461 F.3d 724, 743 n.4 (6th Cir. 2006).)

1707.43 because he was unable to tender to defendant the shares at issue.  Noting that the Ohio

Supreme Court had not yet addressed that specific issue, the district court, applying Ohio law,

exercised its "best judgment as to how the state high court would hold if confronted with the

facts in question."  *Id.* at 118, citing *Bagwell v. Canal Ins. Co.*, 663 F.2d 710 (6th Cir. 1981).

After reviewing several Ohio cases, the district court found that "formal tender of the . . . shares

at this time is not a prerequisite to rescission under § 1707.43.  The parties can be restored to the

positions they were in before the transactions took place by other means."  *Id.* at 119.  Similarly,

in *In re Bell & Beckwith*, 89 B.R. 632, 640 (Bankr. N.D. Ohio 1998), the court, after reviewing

*Roger* with approval, noted that "[o]ther decisions have recognized exceptions to the requirement

that stock be tendered for rescission."[4]

Defendant offers no law to refute the proposition that, certainly for the purposes of Rule

12(b)(6), Plaintiff's "alternative remedy" falls within the "full amount" contemplated by R.C.

§ 1707.43(A).  Like the purchaser in *Roger*, it is possible for the parties to be restored to their

former positions by other means.

Defendant's alternate argument regarding Plaintiff's rescission claim is that it is time-

barred under Ohio R.C. § 1707.43(B).  A plaintiff cannot bring an action under Chapter 1707

"more than two years after the plaintiff knew, or had reason to know, of the facts by reason of

which the actions of the person or director were unlawful, or more than five years from the date

of such sale or contract for sale, whichever is the shorter period." § 1707.43(B).  The limitations

period runs from the date a plaintiff was put on notice of the alleged unlawful acts or

---

[4] The *Bell* court provided the following citations: State Supreme Courts holding tender to be unnecessary when the stock is valueless, *McAtee v. Garred*, 185 Okla. 314, 91 P.2d 1095 (1939); *Lesher v. Bonner*, 269 Mich. 124, 256 N.W. 827 (1934); *Moe v. Coe*, 124 Or. 436, 263 P. 925 (1928); *Vercellini v. U.S.I. Realty Co.,* 158 Minn. 72, 196 N.W. 672 (1924); courts allowing rescission without tender when the securities were not in plaintiff's control, *McBreen v. Iceco*, 12 Ill. App. 2d 372, 139 N.E.2d 845, 847 (1956); *Ek v. Nationwide Candy Div., Ltd.*, 403 So.2d 780 (La. Ct. App., 1981).

misrepresentations underlying the claim.  *Kondrat v. Morris*, 118 Ohio App.3d 198, 206, 692 N.E.2d 246 (1997); *Hater v. Gradison Div. of McDonald and Co. Securities, Inc.*, 101 Ohio App.3d 99, 113-14, 655 N.E.2d 189 (1995).  In Ohio, where claims of fraud arise out of or are predicated on the sale of securities, they are governed by the § 1707.43(B) two-year statute of limitations, not the four-year general statute of limitations for fraud claims governed by § 2305.09.  *Wyser-Pratte Management Co., Inc. v. Telxon Corp.*, 413 F.3d 553, 561 (6th Cir. 2005) (citations omitted).

In general, Ohio courts apply the discovery rule in situations where the wrongful act does not immediately result in injury or damage.  *Harris v. Liston*, 86 Ohio St.3d 203, 205-06 (1999); *Jones v. Hughey*, 153 Ohio App.3d 314, 318-19, 794 N.E.2d 79 (2003).  In such cases, the running of the limitations period is tolled until the injury is discovered or should have been discovered through the exercise of reasonable diligence.  Constructive notice is therefore sufficient to start the two-year period, and "[n]o more than a reasonable opportunity to discover the [fraud] is required to start the period of limitations."  *Craggett v. Adell Ins. Agency*, 92 Ohio App.3d 443, 454, 635 N.E.2d 1326 (1993).  "Information sufficient to alert a reasonable person to the possibility of wrongdoing gives rise to a party's duty to inquire with due diligence."  *Id.* at 562, n.8 (quoting *Craggett v. Adell Ins. Agency*, 92 Ohio App.3d 443, 454, 635 N.E.2d 1326 (1993)).

In *Wyser-Pratte,* the Sixth Circuit upheld the district court's dismissal of claims as barred by Ohio Revised Code Chapter 1707's statute of limitations.  *Wyser-Pratte Management Co., Inc. v. Telxon Corp.*, 413 F.3d 553 (6th Cir. 2005).  The court agreed that the bases for the plaintiffs' lawsuit against the corporation effectively put them on notice to inquire into the actions of the corporation's auditor.  Instead, the plaintiffs filed their complaint against the auditor years later.

> We find that "storm warnings" were certainly present by February
> 23, 1999, as the restatements announced at that time wiped out
> $16.7 million in earnings, based on the "review of certain
> judgmental accounting matters," the bulk of which were attributed
> to recognition of asset impairments, adjustments to valuation
> allowances, and correction of improperly recognized revenue.
> Other storm warnings preceded that announcement, however,
> including: the collapse of the Symbol deal following a due
> diligence review of Telxon's books; the December 11, 1998
> restatement of earnings; the shareholder class actions filed that day
> alleging misrepresentations in the financial statements; delays in
> the release of financial results because the review of certain
> judgmental accounting matters had not been completed; and the
> SEC's commencement of a formal investigation covering Telxon's
> accounting practices.

*Id.* at 563 – 64.  "[T]he alleged fraud by [PricewaterhouseCooper] is based on the same

accounting manipulations and misleading financial statements as the fraud claims against the

Telxon defendants and are such that any reasonable investor would question the oversight of the

auditor."  *Id.* at 566.

Here, Plaintiff contends it was not on notice to inquire until well after the start of

litigation when Defendant's second document production revealed no records regarding the

beginning of the SEC review.  (Mem. Opp., page 13.)  Until that point, Plaintiff had relied on

representations from Defendant that the SEC review did not begin until after the execution and

close of the Agreement.  According to the Amended Complaint, in the weeks after the

Agreement's closing, in August 2007 and September 2007, Defendant disclosed to a Stockholder

and to the Stockholders' counsel, respectively, that an "SEC review and investigation had

begun."  (Am. Compl., ¶ 34.)  "Defendant did not, however, disclose to the Stockholders . . .

that the SEC review and investigation had begun more than a month before the Stockholder[s]

had signed the Agreement, closed the transaction and elected [s]tock rather than cash."  (*Id.*)

Plaintiff also alleges that "Defendant has continued to fail to disclose that fact even in this

litigation, stating under oath in an interrogatory response that the SEC review began after the closing of the transaction, in the fall of 2007 when in truth it began in June of 2007." [5]  (*Id.*, alteration and internal quotation marks omitted.)

Defendant argues that Plaintiff's claim is time-barred as the limitation period began to run when Plaintiff received Defendant's September 2007 disclosure of the SEC review. (Motion, pages 30 – 31.)  At that time, Plaintiff was on notice of the review itself and should have begun an inquiry by way of the SEC's internet website.  (Reply, page 14.)  In addition, "Plaintiff obviously also knew in August 2007 that the SEC review had not been disclosed in the Agreement or in connection with the closing.  (*Id.*)  "Plaintiff attempts to justify his own delay in searching the public records by asserting that [Defendant] failed to disclose the comment and closing letters. . . . Any such failure to disclose provided [P]laintiff no more reason to search in 2009 than in 2007."  (*Id.*)

This Court disagrees with Defendant's contention that Plaintiff was on inquiry notice by virtue of Defendant's announcement in the fall of 2007 that an SEC review had begun, particularly as it allegedly misled the Stockholders into believing that the review had *just* begun. Further, Defendant's contention that Plaintiff "obviously knew" that the Agreement did not disclose the SEC review and therefore was on notice is perplexing.  Notification of an SEC review beginning in the fall of 2007 hardly calls into question the *absence* of any reference to that review months earlier.  In light of the disclosures Defendant had already made during the negotiation process—ORC's 2006 10-K, a proxy statement filed April 17, 2007, ORC's 10-Q filed

---

[5] There seems to be no dispute between the parties that Defendant amended this interrogatory answer sometime later.  (Reply, page 15.)  However, neither Defendant nor Plaintiff offers specific dates of when this amendment occurred. At any rate, that date is not stated in the Amended Complaint, and the Court declines to convert the instant motion into a motion for summary judgment for the purpose of clarifying this issue.  *See* Federal Rules of Civil Procedure, Rule 12(d).

on May 10, 2007, and Forms 8-K filed on May 17, 2007, July 26, 2007, and August 1, 2007 (Am. Compl., ¶ 33)—this "new" information provided to the Stockholders does not rise to the level of the numerous—and ominous—"storm warnings" described in *Wyser-Pratte*. In the wake of Defendant's timely disclosures, as well as its *incomplete* disclosure in the fall of 2007, this Court finds that Plaintiff was not on "inquiry notice" as of September 2007, as argued by Defendant. Therefore, Defendant's argument that the statute of limitations bars Plaintiff's claim fails.

As a result of the foregoing, this Court finds that Plaintiff adequately states a claim for rescission. Therefore, Defendant's Motion to Dismiss with regard to that claim is **DENIED.**

### F. Plaintiff as Representative

Last, Defendant contends that Plaintiff cannot represent the Stockholders' interests in the fraud claims, as "he may act for the other Stockholders only in any litigation or arbitration involving" the Agreement. (Motion, page 36, citing to the Agreement, § 2.12.) The fraud claims, according to Defendant, "do not arise out of the Agreement." (*Id.*) Further, states Defendant, "[e]ach fraud claim requires determining whether any representation was (i) perceived by a stockholder, (ii) reasonably relied upon by such stockholder, and (iii) the cause of harm to such stockholder." (*Id.* at page 37.) Finally, Defendant asserts that Plaintiff's representative capacity is "problematic" because there is "no mechanism to ensure that any ITS Stockholders other than [P]laintiff who were harmed will receive the proceeds of any judgment in favor of [P]laintiff." (*Id.*)

The section of the Agreement appointing Plaintiff as Stockholders' Representative states in pertinent part as follows:

> By execution and delivery of this Agreement, each of the Stockholders hereby irrevocably constitute and appoint Kent D. Stuckey ["Stockholders' Representative"] as his, her or its true and

> lawful agent and attorney-in-fact with full power of substitution to
> act in the name, place and stead of such Stockholders . . . and to act
> on behalf of such Stockholders in any litigation or arbitration
> involving this Agreement . . . .

Defendant relies on no legal support of its contention that "involving" the Agreement necessarily means "arises out of" the Agreement and that Defendant's interpretation, as a matter of law, is the correct interpretation. Taken in a light most favorable to Plaintiff, this Court finds that the fraud claims as alleged in the Amended Complaint can be construed as "involving" the Agreement, insofar as Plaintiff's representation is concerned, including those fraud claims that may require individual review of reliance at the pertinent time.

Similarly, Defendant offers no law to cast any doubt on the propriety of Plaintiff's representational capacity on behalf of the Stockholders with regard to distribution of any judgment awarded. This Court declines to entertain such unsupported arguments, and it relies on Plaintiff's declaration that any award on behalf of Plaintiff in his representative capacity will be "distributed consistent with [P]laintiff's obligations as Stockholders' Representative." (Response, page 34.)

This Court hereby **DENIES** Defendant's Motion to Dismiss with regard to its arguments that Plaintiff may not act as the Stockholders' Representative as to all claims asserted in the Amended Complaint.

## V. CONCLUSION

Based on the foregoing, Defendant's Motion to Dismiss Amended Complaint (doc. # 57) is **GRANTED** as to Plaintiff's following claims **only**: failure to timely process stock transfer; failure to timely provide Net Working Capital calculation; and breach of obligation to terminate ITS's Profit Sharing Plan. These claims are accordingly **DISMISSED** from this action. As to the following claims, the Motion to Dismiss is **DENIED**: breach of registration rights, fraudulent

30

misrepresentation, fraudulent non-disclosure, fraudulent inducement, securities fraud under Ohio

law, and rescission.  In addition, Defendant's Motion to Dismiss is **DENIED** with regard to

Plaintiff's role as Stockholders' representative.

## IT IS SO ORDERED.


Date:  July 12, 2011                                          s/Algenon L. Marbley
                                                      Algenon L. Marbley
                                                      United States District Judge