IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **KENT D. STUCKEY,** | : | |
| | : | **Case No. 2:08-CV-1188** |
| **Plaintiff,** | : | |
| | : | **JUDGE ALGENON L.** |
| v. | : | **MARBLEY** |
| | : | |
| | : | **Magistrate Judge Terence Kemp** |
| **ONLINE RESOURCES CORPORATION,** | : | |
| | : | |
| **Defendant.** | : | |

## OPINION AND ORDER ON DEFENDANT'S MOTION IN LIMINE

### I. INTRODUCTION

This matter is before the Court on Defendant Online Resources Corporation's ("Defendant" or "ORC") Motion in Limine to Exclude Espen Robak as an Expert Witness, ("Motion in Limine"). (Doc. 82.) It is unnecessary to recite again the facts of this case, which have been detailed in this Court's various opinion and orders. *See Stuckey v. Online Res. Corp.*, Case No. 2:08-cv-1188, 2009 WL 5030794 (S.D. Ohio Dec. 11, 2009); *Stuckey v. Online Res. Corp.*, 819 F.Supp.2d 673 (S.D. Ohio 2011) (*"Stuckey II"*); *Stuckey v. Online Res. Corp.*, Case No. 2:08-cv-1188, 2012 WL 468510 (S.D. Ohio Feb. 13, 2012) (*"Stuckey III"*). For the reasons stated below, Defendant's Motion in Limine is **DENIED**.

### II. LAW AND ANALYSIS

Federal Rule of Evidence 702 governs the use of expert testimony, and is, therefore, the starting point in the analysis. Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact
> to understand the evidence or to determine a fact in issue, a witness qualified as

1

>an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. Rule 702 was amended in 2000 to reflect the Supreme Court's decisions in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and *Kumho Tire Company v. Carmichael,* 526 U.S. 137 (1999). In *Daubert*, the Supreme Court held that "general acceptance" is not a necessary precondition for scientific evidence under the Federal Rules of Evidence to be admissible; rather, trial judges are tasked with "ensuring that an expert's testimony rests on both reliable foundation and is relevant to the task at hand." 509 U.S. at 597–80. In *Kumho*, the Supreme Court held that *Daubert*'s "gatekeeping" obligation applies not only to "scientific" testimony, but to all expert testimony. 526 U.S. at 147–49.

Under Rule 702, an expert's opinion is admissible if it satisfies three requirements. Fed. R. Evid. 702; *see In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 528–29 (6th Cir. 2008). First, the witness must be qualified "by knowledge, skill, experience, training, or education." *Id.* Second, the testimony must assist the trier of fact in understanding the evidence or determining a fact in issue. *Id.* Stated differently, it must be relevant. Finally, the testimony must be reliable, and Rule 702 provides some general standards to assess reliability: (1) whether the testimony is based upon "sufficient facts or data"; (2) whether it is the "product of reliable principles and methods"; and (3) whether the expert has "applied the principles and methods reliably to the facts of the case." *Id*.

*Daubert* also provides a non-exclusive list for a district court judge to consult when evaluating the reliability of expert testimony, which includes whether the theory or technique: (1) has been tested; (2) has been subject to peer review and publication; (3) has a high known or

potential rate of error; and (4) enjoys general acceptance.  509 U.S. at 589.  However, the Supreme Court has recognized that the *Daubert* factors "may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony."  *Kumho Tire*, 526 U.S. at 150; *see Gross v. Comm'r*, 272 F.3d 333, 339 (6th Cir. 2001) (explaining that the *Daubert* factors "are not dispositive in every case" and should be applied only "where they are reasonable measures of reliability of expert testimony").  The *Daubert* factors are not "reasonable measures or reliability" in this case.  *See Nelson v. Tennessee Gas Pipeline Co*., 243 F.3d 244, 251 (6th Cir. 2001).  Robak's proposed testimony, based on his report and deposition testimony, instead requires a more generalized assessment of whether it is "based on sufficient facts or data," is the "product of reliable principles and methods," and whether Robak "has reliably applied the principles and methods to the facts of the case."  *See* Fed. R. Evid. 702.

ORC offers a number of arguments as to why Robak's proposed testimony should not be admitted under Federal Rules of Evidence 403 and 702, and *Daubert*.  ORC's Motion in Limine was filed on December 16, 2011, (Doc. 82), prior to this Court's opinion and order denying ORC's Motion for Summary Judgment, which was filed on February 13, 2012, *Stuckey III*, 2012 WL 468510.  This Court rejected a number of the arguments ORC makes in its Motion in Limine in *Stuckey III*.  It is unnecessary, therefore, to consider these arguments at length in this Opinion and Order, but each will be briefly discussed below.

### A. Expertise

ORC's first challenge to Robak's proposed testimony is that Robak does not have the requisite expertise to be calculating damages in this case because he had not heard of *Duncan v. TheraTX, Incorporated*, 775 A.2d 1019 (Del. 2001) prior to beginning work on this case.  ORC

argues that the Court must necessarily draw one of two consequences from this fact: (1) Robak is not an expert on damages; or (2) *Duncan* is not a common, accepted, authority on damages calculations. Stuckey replies that ORC's challenge to Robak's expertise has no merit because whether *Duncan* provides the proper measure of damages in this case is a matter of law for the Court to decide, and this Court decided that *Duncan* applies to this case in *Stuckey III*. "[I]t is the quantification of *inputs* into the *Duncan* formula that fall into Mr. Robak's expertise," Stuckey argues, and "for which his opinion has been offered." (Doc. 91.)

This Court already rejected ORC's argument that *Duncan* is not an authority on damage calculations when it held that "the issues and facts presented in the *Duncan* case are similar to those presented here and *Duncan* should, in fact, provide the applicable measure of damages in this case." *Stuckey III*, 2012 WL 468510, at *7. Moreover, ORC's contention that Robak is not an expert on damages because he had not heard of the *Duncan* case prior to working on this case is unpersuasive. This Court does not expect scientific, technical, or financial experts to know of particular cases that recite methods by which damages can be calculated since the law is not their area of expertise. This Court agrees that "it is the quantification of *inputs* into the *Duncan* formula that fall into Mr. Robak's expertise," and the list of his qualifications indicate that he is capable of performing such quantifications. (Doc. 73-28) ("Robak is President and founder of Pluris Valuation Advisors LLC and a nationally recognized expert on . . . business valuation, restricted and illiquid securities, securities design, levels of value, and discounts for lack of liquidity.").

## B. Relevance

ORC's only argument related to relevance is the Robak's proposed testimony is not relevant because *Duncan* does not apply to this case. As explained above, this Court has already

4

held that *Duncan* applies in *Stuckey III*, 2012 WL 468510, at *7. ORC's relevance challenge is therefore meritless.

### C. Reliability

ORC argues that Robak's proposed testimony is not reliable because he has failed to apply correctly the methodologies in *Duncan* to the facts of this case. ORC makes a series of arguments to support this contention.

*1. Arguments Rejected in Stuckey III*

A number of ORC's reliability challenges were rejected in *Stuckey III*, and will be discussed only briefly.

First, ORC contends that the ITS shareholders ("Shareholders") had the ability to sell their ORC stock using Rule 144 as of February 15, 2008—the date the amendments to Rule 144 became effective, changing the one-year holding period to six months. As a result, ORC argues, Robak used the incorrect date, September 10, 2008, when calculating the second selling period. This argument has been rejected previously by this Court when it held that a reasonable trier of fact could find "that it was unnecessary—even incorrect in light of *Duncan*'s precedent—for Robak to take into account Rule 144 when computing damages in this case." This Court reasoned that sufficient evidence has been presented demonstrating that trading unregistered stock under Rule 144 is not the equivalent of trading registered stock. *Stuckey III,* 2012 WL 468510, at *10.

Next, ORC argues that Robak does not account for the Shareholder price protection rights in his analysis. Again, this Court rejected this contention when ORC challenged the accuracy of Robak's report in its summary judgment motion, finding that "the Shareholders contracted with ORC for *both* registered shares and price protection rights, as separate, bargained-for

consideration." *Id.* at *11 (emphasis in original). Furthermore, "a reasonable trier of fact could find that Robak did not need to account for the price protection mechanism when calculating damages resulting from ORC breach of the [Merger Agreement] related to its failure to file a registration statement." *Id.*

Finally, ORC suggests that Robak incorrectly included ORC stock sold by Shareholders Barry Fromm and Scott Evans prior to August 2008, using Rule 144, in his damages calculation. ORC argues this calculation gives Fromm and Evans a "huge windfall, which shows that Mr. Robak's calculation cannot be correct." (Doc. 83.) This argument was also rejected in *Stuckey III*: "[A]ctual profits made by Fromm and Evans is [*sic*] not relevant under the *Duncan* court's method of calculating damages. Therefore, the fact that Robak failed to account for those profits does not make his expert report incorrect; rather, it means he was accurately applying the *Duncan* formula." 2012 WL 468510, at *9.

## 2. ORC's Remaining Arguments

ORC's remaining arguments as to why Robak's proposed testimony is unreliable confuse the weight, credibility, and accuracy of Robak's proposed testimony with its reliability. *See In re Scrap Metal*, 527 F.3d at 529 (explaining that a party's challenge that an expert's testimony was unreliable because the expert used inaccurate price indexes and incorrectly altered prices was unpersuasive because it "confuse[d] the *credibility and accuracy* of [the expert's] opinion with its *reliability*.") (emphasis in original). This Circuit elaborated on this distinction between weight, credibility, and accuracy versus reliability in *In re Scrap Metal*:

> [A] court must be sure not "to exclude an expert's testimony on the ground that the court believes one version of the facts and not the other." Fed. R. Evid. 702 advisory committee's note, 2000 amend. Instead, the requirement that an expert's testimony be reliable means that it must be "supported by appropriate validation—i.e., 'good grounds,' based on what is known." *Daubert*, 509 U.S. at

6

> 590. The task for the district court in deciding whether an expert's opinion is reliable is not to determine whether it is correct, but rather to determine whether it rests upon a reliable foundation, as opposed to, say, unsupported speculation.

*Id.* at 529–30. Keeping these principles in mind, this Court will now address ORC's remaining arguments in turn.

### a. Robak's Use of the "Highest Intermediate Price"

ORC argues that Robak should not have used $12.21 per share as the highest intermediate price when performing his calculation because it is an intraday price. ORC contends that the *Duncan* court used the highest closing price, which is what Robak should have used. Stuckey retorts that *Duncan* did not limit its holding this way, and that it did not do so because it would have been directly contrary to the jurisprudential logic upon which *Duncan* is based: that shareholders who are contractually entitled to registered shares reasonably expect to have maximum freedom to choose when to trade their shares and at what price, which includes the middle of the trading day. Stuckey also points out that ORC's expert witness admitted at his deposition that the Shareholders could have sold their shares at $12.21 per share on December 27, 2007.

This Court has reviewed the *Duncan* opinion, and nowhere therein does the court hold the highest intermediate price used in a calculation must be a highest *closing* price. *See generally* 775 A.2d 1019. The logic set forth in *Duncan*—i.e. maximum freedom to trade—does appear to contradict directly with ORC's argument. Nevertheless, because *Duncan*'s holding does not limit the intermediate price to the highest closing price, ORC is, in actuality, arguing about the weight this Court should give to Robak's calculation, rather than its reliability, which makes ORC's argument unconvincing in the context of this Motion in Limine. *See Quick Tech. DC-8, Inc. v. Hurel-Debois UK Ltd.*, 326 F.3d 1333, 1345 (11th Cir. 2003) (explaining that

where the appellant was not arguing that it was improper to conduct a study using the certain aerodynamic data that the expert employed, but rather the specific numbers the expert used were wrong, the alleged flaws in the expert's analysis "are of a character that impugn the accuracy of his results, not the general scientific validity of his methods").

### b. Robak's Calculation of the Start and End Points of the Second Selling Period

ORC's final challenge to the reliability of Robak's proposed testimony is that he used the incorrect starting and ending point when calculating the second *Duncan* selling period. *See* 775 A.2d at 1020 ("the average market price of the shares during a reasonable period after the restrictions were lifted"). Robak determined the second selling period to be 86 trading days beginning on September 10, 2008 and ending on January 12, 2009. (Doc. 73-28 at Exhibit 15.)

ORC contends that the second selling period should have started on August 10, 2008, which is the anniversary of the twelve-month effective date of the Merger Agreement and exact day the ORC stock was eligible to have its restrictive legends removed. ORC points to this Court's decision in *Stuckey II* dismissing Plaintiff's claim related to ORC's failure to transfer timely the ORC stock during August 2008 to support its argument. 819 F.Supp.2d at 680–81.

Stuckey retorts that ORC's argument is not factually supportable. Stuckey presents evidence that the restrictive legends were not removed on time and that the Shareholders instead received their unrestricted stock from August 28, 2008 until December 19, 2008. With respect to ORC's argument that this Court has already held it is not liable for the delays associated with the timely transfer of the ORC stock, Stuckey argues that ORC "misses the point" because here, the delays are not bearing on ORC's breach of contract, but instead on the question of "when the 'restrictions are lifted' for the purpose of calculating damages under the controlling law of *Duncan*." (Doc. 91.)

These issues related to the appropriate date to start the second selling period go to the weight and accuracy of Robak's proposed testimony rather than its reliability.  If this Court were to exclude ORC's testimony on these grounds, it would be doing so because it "believes one version of the facts and not the other," *see* Fed. R. Evid. 702 advisory committee's note, 2000 amend., and the Sixth Circuit has instructed this Court that this would be incorrect grounds upon which to exclude expert testimony.  *See In re Scrap Metal*, 527 F.3d at 529–30.  Furthermore, this Court's prior holding in *Stuckey II* that Stuckey failed to state a claim for breach of contract for failure to timely transfer the stock, has little to do with Robak's calculation of damages and determination of the date "after the restrictions were lifted."  *See Duncan*, 774 A.2d at 1020.

ORC also argues that Robak incorrectly included 262,703 price protection shares when calculating the length of the second selling period, which yielded a ten-day increase.  ORC argues that the addition of these shares "defies logic" because the Stockholders would have been better off not exercising price protection and ORC would have been better off breaching the Merger Agreement and refusing to give the Shareholders there price protection shares because: "[e]ither approach would have resulted in the former ITS shareholders having fewer shares. That, in turn, would have shortened Mr. Robak's Second Selling Period, thereby increasing the average price during the Second Selling Period, and correspondingly reducing damages."  (Doc. 83.)

Stuckey's reply is twofold.  First, Stuckey argues ORC's argument is factually incorrect because Robak included the 262,703 price protection shares, but also subtracted out 189,918 shares that were repurchased by ORC.  As a result, Robak's analysis only added 72,785 shares. The addition of these 72,785 shares compared to the 2,216,653 shares originally issued have a *de minimis* effect on the resulting damages under *Duncan* because they do not add ten additional

trading days, but three additional trading days.  Moreover, under *Duncan*, the average price over the second selling period is what counts, and the difference in the average price calculated over 86 versus 83 days is negligible.[1]  Second, Stuckey argues that ORC's contention that Robak's calculation "defies logic" makes no sense because the Shareholders and ORC would both have had to have known whether the ORC stock price was going to increase or decrease in the futures.

Simply stated, these issues again do not go to reliability of Robak's proposed testimony, but to its accuracy and weight.  The parties are arguing about specific numbers that have been input into the *Duncan* formula, which is an improper basis upon which to exclude expert testimony.  *See Quick Tech.*, 326 F.3d at 1345.  ORC will be free to cross-examine Robak on these points during trial.  Additionally, ORC's argument that Robak's calculation "defies logic" is necessarily linked to whether the ORC stock price increased or decreased in the future, and both ORC and the Stockholders had no way of knowing that information.  That argument is without merit as well.

### D. Request for Oral Argument

ORC also requests oral argument in its reply brief "because of the complexity of the factual and legal issues presented."  (Doc. 94.)  ORC's request is **DENIED,** as this Court finds oral argument unnecessary.  The issues are clearly presented in the parties' briefs.  Moreover, as explained in greater detail below, many of the complex arguments made by the parties go to the weight, rather than the admissibility, of Robak's proposed testimony.  The parties will have the opportunity to question Robak when he is on the stand.  This is a bench trial, and consequently, concerns related to confusing the trier of fact are subdued.  This Court is confident it will be able

---

[1] According to Stuckey, using 83 trading days, rather than 86, increases the average price by 4 cents per share, reducing the damages from $14,463,322.45 to $14,384,253.05, a difference of 0.54%.

to understand the difficult issues presented in this case with the help of the skilled counsel in this case.

### III. CONCLUSION

For the foregoing reasons, Defendant's Motion in Limine is **DENIED**.  ORC's request for oral argument in this Motion in Limine is also **DENIED**, as the Court finds it unnecessary in light of the thorough briefs filed by the parties, as well as the fact that this is a bench trial.

**IT IS SO ORDERED.**

                                               **s/ Algenon L. Marbley**
                                               **Algenon L. Marbley**
                                               **United States District Judge**

**Dated: May 17, 2012**